DA 14-0328

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 59N

IN THE MATTER OF:

J.S., J.S., and J.S.,

     Youths in Need of Care.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause Nos. DN 13-123, DN 13-124, and DN 13-125
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Johnna K. Baffa, Van de Wetering & Baffa, P.C., Missoula, Montana

    For Appellee:

    Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant Attorney General, Missoula, Montana

    Kirsten Pabst, Missoula County Attorney, Matthew Lowy, Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  February 4, 2015
Decided:  February 24, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      R.S. (Father) appeals from an order of the Fourth Judicial District Court, Missoula County, terminating his parental rights to his three children, J.S., J.S., and J.S. We affirm.

¶3      The issue on appeal is whether substantial evidence supported the District Court's finding that the circumstances related to the prior termination of Father's parental rights to several of his other children are relevant to his ability to care for the children in the present case.

¶4      The children involved in this proceeding are a 16-year-old boy, a 12-year-old girl, and a 10-year-old girl. The family has an extensive history of involvement with child protective services in multiple states. The children report that their parents have 14 children altogether, although Child Protection Specialist Taryn Kovac was able to confirm the identities of only nine. The three children in the present case have not seen their mother for approximately six years, and she could not be located during these proceedings.[1]

---

[1] Mother's rights were also terminated, but only Father is party to this appeal.

¶5     In 1993, the family was residing in various locations around Missoula and Ravalli counties. The Department of Public Health and Human Services (Department) removed four children, ranging in age from seven to three, from their parents' care in circumstances of severe abuse and neglect. The children had witnessed severe domestic violence and sexually inappropriate behavior. The oldest boy exhibited "extreme noncompliant, destructive and manipulative behavior." The oldest girl demonstrated "no range of emotion," and there were significant indications that she had been sexually abused. The younger boy had reportedly "decided that death was preferable to being returned" to his parents. While the children were in care, the parents had another baby, a girl. The infant was removed from the parents' care three days after her birth. The parents' rights to all five children were terminated on February 20, 1996, after testimony indicating that the four older children all had attachment disorders and post-traumatic stress disorder resulting from abuse and neglect. There was also testimony that the infant girl "would be at a very high risk for sexual and emotional abuse if she were returned" to the parents.

¶6     For the next several years, the family moved from state to state, often fleeing child protective services. During this period, Mother and Father separated. On December 5, 2013, the three children in the present case traveled from Eagle, Alaska, a small village where they had been living with Father, to Missoula. The purpose of the journey was to "get the family back together," because Father intended to marry his 19-year-old daughter—the infant girl to whom his parental rights had previously been terminated. On December 10, 2013, Kovac received a referral indicating that law enforcement was

3

investigating reports that Father was having an incestuous relationship with his daughter, who is apparently developmentally disabled. The report indicated that the three children were living with Father and his 19-year-old daughter; they were aware that the young woman was their biological sister and Father's biological daughter; and they were aware of and had witnessed the father-daughter sexual relationship.

¶7 Kovac observed that the 16-year-old boy exhibited "extreme oppositional behaviors," and "freely admit[ted] his 'violent rages,' his hatred of his younger sisters and his near successful attempts to convince his mother to 'give them away' . . . ." He had a "noticeable stench of urine." When Kovac initially met the 12-year-old girl at First Step, the girl repeated to herself and her younger sister, "they are strangers, do not talk to them." Both she and her older brother "demonstrate[d] anti-social behavioral traits with flat affects." The 10-year-old girl appeared "not grounded with reality, or able to express herself," which Kovac believed was "consistent with exposure to abuse, neglect, and isolation from society." The two girls "appeared absolutely emotionless" upon being removed from Father's care only five days after arriving in a strange town. Kovac observed that the girls' emotionless behaviors were "similar, if not identical, to the behaviors their elder siblings displayed in psychological and behavioral evaluations in the 1990s."

¶8 On December 17, 2013, the Department petitioned for the termination of parental rights and a determination that reasonable efforts to provide reunification services were not required, on the basis that the parents' rights to the children's siblings had previously been involuntarily terminated under circumstances relevant to the parents' ability to

4

adequately care for the children at issue. A hearing was held April 9, 2014, at which Kovac testified. The District Court, which had also presided over the 1996 terminations, took judicial notice of the facts and testimony previously submitted. The District Court found that reunification services were not required and terminated the parental rights of Mother and Father with respect to the three children.

¶9 We review a district court's termination of parental rights for abuse of discretion. *In re J.W.*, 2013 MT 201, ¶ 25, 371 Mont. 98, 307 P.3d 274. We review a district court's conclusions of law for correctness and its findings of fact for clear error. *J.W.*, ¶ 25. A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if we are left with the definite and firm conviction that a mistake has been made. *In re S.B.C.*, 2014 MT 345, ¶ 17, 377 Mont. 400, 340 P.3d 534.

¶10 A district court may order termination of the parent-child legal relationship without requiring the Department to provide reunification services if the court finds that the parent's rights to another child have been involuntarily terminated under circumstances relevant to the parent's ability to care for the child at issue. Sections 41-3-423(2), -609(1), MCA. The record before the District Court demonstrated that the circumstances of the previous termination included concerns about sexual abuse of one or more of the girls in the family, significant violent and anti-social behaviors by the boys in the family, and emotionless affect and attachment disorders present in all of the children. The same concerns are still clearly present with respect to these three children: the 16-year-old boy exhibits extreme oppositional tendencies and violent rages; the

5

12-year-old girl shows no emotion, even in circumstances that would ordinarily be extremely distressing to a young child; and the 10-year-old girl showed signs of severe neglect and lack of attachment. At the time of the previous termination, testimony indicated that Father's infant daughter would be at significant risk of sexual abuse if she remained in his care; Father is currently charged with incest as the result of a sexual relationship with that daughter, now a developmentally disabled adult. The condition of the children is nearly identical to that of their older siblings almost 20 years ago. There was substantial evidence supporting the District Court's finding that the circumstances of that termination remained relevant to Father's ability to care for the children presently at issue.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The District Court's findings of fact are supported by substantial evidence, and there clearly was no abuse of discretion.

¶12 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA